OPINION OF THE COURT
McCarthy, J.
Petitioners were members of Piccolo Properties, LLC, which was certified pursuant to General Municipal Law article 18-B as a Qualified Empire Zone Enterprise (hereinafter QEZE). The *109 corporation owned five parcels of property in the Auburn Empire Zone. The Auburn Empire Zone is located within the Downtown Auburn Business Improvement District, which levies a charge — known as the downtown improvement tax — on all properties in the district to pay for things such as beautification projects, cultural events, business promotion, safety programs and accessibility projects. Petitioners, having satisfied all of the prerequisites under Tax Law § 15, were entitled to claim the QEZE credit for “eligible real property taxes” paid by Piccolo Properties (Tax Law § 15 [a], [former (e)]; see generally Tax Law §§ 14, 606 [bb]). Petitioners timely filed joint state resident personal income tax returns for 2004, 2005 and 2006 and claimed refundable QEZE credits for each year, including therein the amounts paid for the downtown improvement tax. Although the claimed refunds were initially issued, the Department of Taxation and Finance conducted an audit and issued notices of deficiency in the amount of the downtown improvement tax for each year.[1]
Petitioners filed a petition for redetermination, resulting in an Administrative Law Judge (hereinafter ALJ) granting the petition and canceling the notices of deficiency. Upon appeal by the Division of Taxation, respondent Tax Appeals Tribunal reversed the ALJ’s determination and sustained the notices of deficiency. Petitioners commenced this proceeding challenging the Tribunal’s determination.
The parties agree on the facts and that petitioners are entitled to claim QEZE credits for “eligible real property taxes” (Tax Law § 15 [a], [former (e)]), but disagree as to whether the downtown improvement tax falls within the definition of that phrase. To resolve the issue, we must determine whether the quoted phrase includes special ad valorem levies and special assessments in addition to traditional taxes and, if not, whether the downtown improvement tax is actually a tax as opposed to an ad valorem levy or special assessment.
On the first issue, the phrase “eligible real property taxes” does not include special ad valorem levies and special assessments. As relevant here for the tax years at issue,[2] the statute defined “eligible real property taxes” as
“taxes imposed on real property which is owned by *110 the QEZE and located in an empire zone with respect to which the QEZE is certified . . . , provided . . . such taxes become a lien on the real property during a taxable year in which the owner of the real property is both certified pursuant to article [18-B] of the general municipal law and a [QEZE]” (Tax Law § 15 [former (e)]).
Piccolo Properties was a certified QEZE that owned property in an empire zone, but these established elements are irrelevant unless the downtown improvement tax qualifies as “taxes imposed on real property.” Neither Tax Law former § 15, nor the previous section that is cross-referenced as governing definitions of terms used in Tax Law § 15 (see Tax Law §§ 14, 15 [h]), defines the phrase “taxes imposed on real property” or the more general term “taxes.” The definition of that phrase presents a question of pure statutory interpretation, requiring our analysis of the statutory language and legislative intent, with no deference accorded to the Division of Taxation’s or the Tribunal’s interpretations (see Matter of Michael A. Goldstein No. 1 Trust v Tax Appeals Trib. of the State of N.Y., 101 AD3d 1496, 1497 [2012]; see also Matter of Gruber [New York City Dept. of Personnel — Sweeney], 89 NY2d 225, 231-232 [1996]).
Nevertheless, we agree with the Tribunal’s analysis that Tax Law § 15 and the RPTL generally are in pari materia, in that they deal with the same general subject matter, and must be construed together (see Matter of Guardian Life Ins. Co. of Am. v Chapman, 302 NY 226, 231 [1951]; Matter of American Tel. & Tel. Co. v State Tax Commn., 93 AD2d 66, 73 [1983], mod 61 NY2d 393 [1984]; McKinney’s Cons Laws of NY, Book 1, Statutes § 221). Although the Legislature has specifically referred, in other sections of the Tax Law, to definitions in the RPTL (see e.g. Tax Law §§ 171-u [1], [5] [a], [b]; 606 [e] [1] [D]; 1101 [b] [4] [i]; 1105 [c] [3] [iii]; [5]; 1110 [a]; 1115 [a] [15], [16]; 1119 [d] [2] [C]; [f] [2] [B]; 1310 [e] [2]), and has amended Tax Law § 15 (e) to include a definition of tax for that subdivision rather than referring to RPTL 102 (20) (see L 2010, ch 57), it is still logical to apply RPTL 102 definitions to terms in Tax Law § 15 when no definition is supplied there. The definition of tax in RPTL 102 (20) is “a charge imposed upon real property by or on behalf of a county, city, town, village or school district for municipal or school district purposes, but does not include a special ad valorem levy or a special assessment.”
Even without considering the RPTL definition, the Legislature has implied through several other sections of the Tax Law that the term tax does not ordinarily include special assessments or *111 ad valorem levies. In multiple instances, the Legislature has stated that, for those particular sections, the term tax includes special assessments (see e.g. Tax Law §§ 32 [a] [13]; 33 [a] [6]; 173-a [1] [a]; 174-a [2]; 174-b [2]; 3002 [a]), thereby indicating that tax does not include special assessments when used elsewhere in the Tax Law (see Matter of Gruber [New York City Dept. of Personnel — Sweeney], 89 NY2d at 234). Additionally, in several sections of the Tax Law, the Legislature has separately referred to taxes and special assessments and special ad valorem levies, further establishing that those terms are not interchangeable and that the term taxes does not ordinarily encompass the other categories (see e.g. Tax Law §§ 210 [22] [c]; 606 [e] [1] [E]; [n] [3]; see also Tax Law § 697 [1] [2] [A] [i]). Significantly, courts have long recognized that general exemptions from taxation do not include an exemption from special assessments for local benefits or improvements, thus indicating the different treatment of taxes versus special assessments (see Board of Educ. of Union Free School Dist. No. 6 v Town of Greenburgh, 277 NY 193, 195-196 [1938]; People ex rel. Westchester Fire Ins. Co. v Davenport Trustees, 91 NY 574, 586-587 [1883]; Matter of Luther Forest Corp. v McGuiness, 164 AD2d 629, 631 [1991]).
Petitioners assert that the legislative history of the Empire Zones Program requires a different interpretation of Tax Law § 15 (former [e]), one that would include ad valorem levies and special assessments within the phrase “eligible real property taxes.” Petitioners cite to documents from 1986 and 2000 to support their claim that the purpose of the legislation was to encourage economic growth through the creation of “tax free” Qualified Empire Zones. However, petitioners’ interpretation of the phrase “tax free” is overbroad. A legislative intent to exempt petitioners from property tax does not, by extension, exempt petitioners from all charges that could be placed upon a local business. Such an interpretation would be in contravention of the settled meaning of the term tax. “By long-standing precedent, statutory relief from real property ‘taxation’ . . . was held not to apply to taxes imposed for special benefits, typically in the form of special ad valorem levies or special assessments” (Matter of Luther Forest Corp. v McGuiness, 164 AD2d at 631 [citation omitted]).
Statutes creating exemptions must be strictly construed against the taxpayer and, if ambiguity arises, against the exemption (see Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 19 NY3d 1058, 1060 [2012]; Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin., 83 NY2d *112 44, 49 [1993]), although such statutes should not be interpreted so narrowly as to defeat their settled purposes (see Matter of Gordon v Town of Esopus, 15 NY3d 84, 90 [2010]). A taxpayer seeking an exemption from taxation bears the burden of proving an unambiguous entitlement thereto (see Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 19 NY3d at 1060; Matter of United Parcel Serv., Inc. v Tax Appeals Trib. of the State of N.Y., 98 AD3d 796, 798 [2012], lv denied 20 NY3d 860 [2013]), showing that the proffered “interpretation of the statute is not only plausible, but also that it is the only reasonable construction” (Matter of Moran Towing & Transp. Co. v New York State Tax Commn., 72 NY2d 166, 173 [1988]; see Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin., 83 NY2d at 49; Matter of CBS Corp. v Tax Appeals Trib. of State of N.Y., 56 AD3d 908, 909-910 [2008], lv denied 12 NY3d 703 [2009]). Under this standard, petitioners have not met their burden of establishing that the term “eligible real property taxes” in Tax Law § 15 (former [e]) includes an exemption from ad valorem levies or special assessments.
Under the same standard, petitioners have not met their burden of proving that the tax exemption under Tax Law § 15 (former [e]) applies to the downtown improvement tax. The application of a broad statutory term in a tax statute to a particular situation entails a fact-based inquiry on a matter within the Tribunal’s expertise, requiring us to give deference to the Tribunal’s finding on this issue and uphold it if it is supported by a rational basis (see Matter of Easylink Servs. Intl., Inc. v New York State Tax Appeals Trib., 101 AD3d 1180, 1181-1182 [2012]; Matter of Sacks v Tax Appeals Trib. of the State of N.Y., 99 AD3d 1120, 1121 [2012]; see also Matter of O’Brien v Spitzer, 7 NY3d 239, 242 [2006]). The definition of tax in RPTL 102 (20) is “a charge imposed upon real property by or on behalf of a county, city, town, village or school district for municipal or school district purposes, but does not include a special ad valorem levy or a special assessment.” Those excluded categories are defined to cover charges “imposed upon benefited real property ... to defray the cost, including operation and maintenance, of a special district improvement or service,” with ad valorem levies being imposed “in the same manner and at the same time as taxes for municipal purposes,” whereas special assessments are imposed “in proportion to the benefit received by such property” (RPTL 102 [14], [15]). “Taxes are public burdens imposed generally for governmental purposes benefiting the entire community, whereas an ad valorem levy [or special as *113 sessment] is an assessment imposed for specific municipal improvements which confer a special benefit on the property assessed beyond that conferred generally” (Matter of Crandall Pub. Lib. v City of Glens Falls, 216 AD2d 814, 815 [1995]; see Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 58 [1978]).
The parties do not dispute that the Downtown Auburn Business Improvement District meets the definition of a special district (see RPTL 102 [16]). The downtown business tax is a charge to support the district’s services. To determine whether a parcel is benefited, courts look at whether the property, due to its innate characteristics, is capable of receiving the offered service funded by the levy or assessment or whether the property’s value is enhanced by its inclusion in the district (see New York Tel. Co. v Supervisor of Town of Oyster Bay, 4 NY3d 387, 394 [2005]; Matter of Palmer v Town of Kirkwood, 288 AD2d 540, 541 [2001]). The Auburn City Council found, in creating the district, “that all properties within the district will benefit from its establishment and that all property benefited is included in the boundaries of the district” (Local Law No. 1 [2001] of City of Auburn). The downtown improvement tax is levied to pay for, among other things, beautification projects, cultural events, safety programs and accessibility projects benefiting the district. Even if some benefits related to the district’s services also flow to the city as a whole, it is logical to conclude that the properties within the district receive significantly greater benefits from the district’s services (see Matter of Scarsdale Chateaux RTN v Steyer, 41 NY2d 1043, 1044-1045 [1977]). The Tribunal reasonably concluded that, despite its label as such, the downtown improvement tax was not actually a tax. It is irrelevant whether that charge was actually a special assessment or ad valorem levy, as both are excluded from the definition of tax (see RPTL 102 [20]). This interpretation of Tax Law § 15 (e) is not so narrow as to defeat the statute’s purpose, considering that petitioners did receive the QEZE credit for all actual real property taxes that Piccolo Properties paid for the eligible parcels. As petitioners failed to meet their burden of proving their entitlement to the QEZE credit for the downtown improvement tax, the Tribunal’s determination was rationally based and not erroneous.
Mercure, J.P., Spain and Egan Jr., JJ., concur.
Adjudged that the determination is confirmed, without costs, and petition dismissed.

. The initial notices included other amounts as well, but the parties have resolved their differences on all items except the downtown improvement tax.

. Tax Law § 15 (e) was amended in 2010 to specifically define the term “tax” for purposes of that subdivision, but the amendment is not applicable to the tax years at issue here (see L 2010, ch 57, § 1, part R, § 13).